**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| **CATHY L. RITCHIE, individually and on behalf of all others similarly situated,** | ) ) ) ) | **Civil Action No.:** 9:14-cv-4734-SB |
| **Plaintiff,** | ) ) | **CLASS ACTION COMPLAINT** |
| **vs.** | ) ) | **(Re: Defective Products)** |
| **WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC.,** **Defendants.** | ) ) ) ) ) | **Jury Trial Demanded** |

The Plaintiff, Cathy L. Ritchie, individually, and on behalf of all others similarly situated, complaining of the Defendants named herein, would respectfully allege and show the Court as follows:

## NATURE OF ACTION

1.    This is a class action asserting negligence/gross negligence, breach of express warranty, breach of implied warranties of merchantability and fitness for particular purpose, negligent misrepresentation, strict products liability and seeking damages in connection with defective windows designed, manufactured, marketed, advertised, distributed, and sold by Defendants, Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.

## THE PARTIES

2.    Plaintiff Ritchie is a natural person and citizen of South Carolina. Ritchie owns a home in Beaufort, South Carolina (Beaufort County), in which Defendants' windows are installed.

3.      Defendant Windsor Window Company d/b/a Windsor Windows and Doors was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa.  At all times relevant herein, Windsor Windows and Doors transacted and conducted business in South Carolina.

4.      Defendant Woodgrain Millwork, Inc. was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

5.      At all times relevant herein, Woodgrain Millwork, Inc. was the parent company of Windsor Windows and Doors, and jointly transacted and conducted business in South Carolina.

6.      Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the windows at issue.

7.      At all times relevant herein, the Defendants were actual and/or de facto joint venturers in the design, development, manufacture, marketing, and sales of the windows at issue.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity as Plaintiff is a citizen of South Carolina and Defendants are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Plaintiff class.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Additionally, at all times relevant herein, Defendants conducted

and/or transacted business in this Judicial District, and therefore, is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10.    Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the windows that are the subject of this litigation.

11.    At all times relevant herein, Defendants were engaged in the marketing, sale, supply, and delivery of windows in the State of South Carolina.

12.    At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed wood and wood clad windows ("the Windows").

13.    In 2009, Plaintiff purchased land and contracted for the construction of a home with the property address of 11 Belle Isle Farms Drive, Beaufort, South Carolina.

14.    The Windows were installed in Plaintiff's home during construction.

15.    The Windows are defective and fail to perform at Plaintiff's residence and at class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frame and sashes, and into the interior of the residences.

16.    The Windows are defective and fail to perform at Plaintiff's residence and at class members' residences by permitting water to penetrate the window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.

17.    Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

18.     The water intrusion and above-described damages resulting from the Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

19.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

20.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards.

21.     The above-described deficiencies exist at the time the Windows leave the factory.

22.     Failure of the Windows begins upon installation, and continues during repeated and prolonged exposure to weather and ordinary use.

23.     Defendants knew or should have known that the defects were present at the time the products left their control.

24.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective design or formulation that resulted in said damage.

25.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture and that resulted in said damage.

26.     Defendants failed to warn purchasers, installers, or users of the above-described risks of failures.

27.    The purchase of Defendants' Windows includes a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser at the time of sale.

28.    The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiff Ritchie and class members.

29.    The typical purchase agreement for the sale and/or construction of class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

30.    The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the window warranties, forms part of the basis of the bargain at the time Plaintiff and class members purchased the homes.

31.    Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

32.    Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

33.    Defendants represent in their express warranty and documents available to the public that the Windows would be free from defective materials and workmanship for at least 10 years.

34.    Plaintiff Ritchie and putative class members relied upon these representations when Plaintiff Ritchie purchased the Windows and/or structures containing the Windows.

5

35.    Plaintiff Ritchie and putative class members reasonably expected and expect that the Windows would last longer than 10 years.

36.    Defendants' representations, expressly and impliedly, through their website, brochures, and marketing materials that the Windows are suitable and free from defects, were intended to and likely did affect the market by inducing builders, contractors, suppliers, and others to purchase the Windows.

37.    Plaintiff put the installer/supplier of the Windows and Defendants on notice of the defects and damages; and Defendants were also put on notice of defects and damages by the installer/supplier of the Windows.

38.    Defendants and/or their representatives purportedly attempted to repair or replace the defective Windows and components.

39.    Defendants and/or their representatives failed to adequately remedy the defects and damages, and subsequently ceased all communications with Plaintiff.

40.    Defendants were put on notice of defects and resultant damages in the Windows by other homeowners in South Carolina and other states across the country.

41.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

42.    The published written warranties include the following limitations and exclusions:

(a)    The warranty is ambiguous with regard to coverage of the windows' wood components;

(b)    The warranty limits coverage of wood warping;

(c)    The warranty purports to exclude damages caused by design limitations and design defects;

(d)    The warranty excludes the cost of labor for removal, repair, or replacement of defective parts, products, or glass;

(e)    The warranty excludes the cost of repainting or refinishing, associated with the repair or replacement of defective parts or products.

(f)    The warranty requires that the homeowner be able to identify a "defect" in the Windows;

(g)    The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect.

(h)    The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the window is installed and put into use and operation.

(i)    The warranty makes Defendants the final determiners of whether or not a defect exists;

(j)    The warranty potentially requires payment of a field service fee for inspecting the windows;

(k)    The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

(l)     The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

(m)    The warranty purports to exclude any liability for consequential, incidental, or punitive damages;

(n)     The warranty purports to exclude any liability in excess of the original purchase price of the product;

(o)     The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

(p)     The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

(q)     The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

(r)     The warranty purports to disclaim future performance of the Windows;

(s)     The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

(t)     The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

(u)     The warranty's 10 year limitation is in and of itself unconscionable; and

(v)     In other such ways revealed during discovery, and/or otherwise determined at trial.

43.     The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

44.     Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to the homeowner, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

45.     The above described pattern and practice by Defendants have the effect of discouraging defect claims by class members or continuing to pursue remedies through the Defendants.

46.     Moreover, during contact with class members, Defendants conceal their knowledge of defects in the Windows in the class members' residences.

47.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed of its essential purpose and the limitations therein are null and void, and the Plaintiff and class members have otherwise not received the value for which they, their builders or contractors bargained for at the time the Windows were purchased or transferred to homeowners.

48.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

49.     Given the leaking, rotting, premature degradation, and failure of the Windows, the Windows have a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiff and class members.

50.     The Windows' defects and resultant damages have caused a diminution of the value of the homes.

51.     Defendants knew or should have known that the Windows did and do not satisfy industry standards.

52.     Defendants knew or should have known that their Windows were defective in design and manufacture, not fit for their ordinary and intended use, not merchantable, and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

53.     Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiff Ritchie and class members.

54.     Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable nor suitable for use as an exterior building product.

55.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiff Ritchie's home and are common among class members.

56.     The Plaintiff and class members have been proximately damaged by the Windows' above-described defective condition and Defendants' above-described conduct.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff Ritchie brings this action individually and as representative of all those similarly situated pursuant to Rule 23, F.R.C.P., on behalf of the Class.  The Class is defined as follows:

> All persons and entities that own structures located within the State of South Carolina in which Windsor's wood or wood clad windows are installed.
>
> This class excludes:
>
> a)    any Judge or Magistrate presiding over this action and members of their families;

b) any employees of Defendants;

c) any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives, assigns, and successors;

d) any person who has released Windsor or is currently in litigation with Windsor related to Windsor's wood or wood clad windows; and

e) all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiff proposes that the class be divided into subclasses if and as necessary to align class interests.

58.     *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of South Carolina, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

59.     *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

60.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a)     Whether the Windows are defective;

(b)     Whether Defendants were negligent in their design and manufacture of the Windows;

(c)     Whether Defendants knew or should have known about the defective condition of the Windows;

(d)     Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

(e)     Whether Defendants breached their express and implied warranties;

(f)     Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

(g)     Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants.

61.     *Typicality*: Plaintiff Ritchie's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

62.     *Adequate Representation*: Plaintiff Ritchie will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class given the Plaintiff is a member of the Class she also seeks to represent.  The Plaintiff has retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

63.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout South Carolina would be confronted with a

12

multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

64.    Moreover, Plaintiff envisions no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

65.    Plaintiff and class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiff and class members did not discover the defect, and could not reasonably have discovered the defect.

66.    Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

67.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiff, class members, and the general public that their Windows were defective, while continually marketing the Windows as a durable and suitable product.

68.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

69.    Plaintiff and class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

70.    Defendants did not notify, inform, or disclose to Plaintiff and class members that there were defects in the Windows.

71.    Because Defendants failed in their duty to notify Plaintiff and class members that their product was defective, the statute of limitations should be tolled on Plaintiff's and class members' claims.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

72.    Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiff's and class members' claims.

73.    By virtue of Defendants' acts, the Windows installed in Plaintiff's and class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

74.    Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff and class members.

75.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

76.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

77.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

**FOR A FIRST CAUSE OF ACTION**
**Negligence/Gross Negligence**

78.     The above allegations are incorporated as fully as if stated verbatim herein.

79.     At all times material hereto, Defendants designed and manufactured the Windows.

80.     Defendants had a duty to Plaintiff and class members to design and manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

81.     Defendants had a duty to Plaintiff and class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

82.     Defendants had a duty to Plaintiff and class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

83.    Defendants had a duty to Plaintiff and class members to ensure their Windows complied with industry standards.

84.    Defendants had a duty to Plaintiff and class members to forewarn purchasers, installers, and users regarding the known risk of product failures.

85.    Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows.

86.    The Plaintiff and class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

87.    As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiff class is entitled to an award of punitive damages against Defendants.

**FOR A SECOND CAUSE OF ACTION**
**Breach of Implied Warranty**

88.    The above allegations are incorporated as fully as if stated verbatim herein.

89.    Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in South Carolina.

90.    Defendants manufactured and sold their Windows to Plaintiff, class members, and/or Plaintiff's and class members' agents, and in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

91.    Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

92.    The numerous and serious defects described herein make the Windows unfit and inappropriate for its intended use within structures.

93.    The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain cycles, throughout each year.  Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

94.    Despite having knowledge of the Windows' defects, have failed to provide an adequate remedy.

95.    As Defendants' express warranty (and warranty claims process thereunder) has been breached and/or is unconscionable and/or fails of its essential purpose, as described above, the limitations on implied warranties contained within the express warranty should be deemed null and void and of no effect or limitation.

96.    As a result, Defendants breached their implied warranties to Plaintiff and class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

97.    Plaintiff and class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

98.    As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiff and class members have suffered actual and consequential damages.

### FOR A THIRD CAUSE OF ACTION
**Breach of Express Warranty**

99.    The above allegations are incorporated as fully as if stated verbatim herein.

100.    Defendants marketed and sold Windows into the stream of commerce with the intent that the Windows would be purchased by Plaintiff and class members.

101.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

102.    Purchase agreements for the construction or sale of residences or structures, including Plaintiff Ritchie's purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties.  Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

103.    The Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten (10) years.

104.    Upon information and belief, all of Defendants' written warranties applicable to class members contain the same or similar provisions.

105.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiff and class members.

106.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiff's and class members' residences and/or structures.

107.    Specifically, Defendants expressly warranted to Plaintiff and class members that the Windows purchased by Plaintiff and class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

108.    However, Defendants' warranties fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only several years' or less use.

109.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendant seeks to reduce the reasonable expected life of the product.

110.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty claims.

111.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

112.    As a result of Defendants' breaches of express warranties, Plaintiff and class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiff and class members to incur significant expense in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's and class members' residences.

113.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, the Plaintiff and class has suffered actual and consequential damages.

## FOR A FOURTH CAUSE OF ACTION
**Negligent Misrepresentation**

114.    The above allegations are incorporated as fully as if stated verbatim herein.

115.    Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiff and class members, builders, suppliers and the public about the superior quality and durability of their Windows and components.

116.    Specifically, Defendants have represented that their windows are durable, of "superior construction;" "constructed with the highest grade materials, hardware, and glass;" and that Defendants "carefully monitor every product throughout the entire manufacturing process;" and have made similar representations throughout various time periods in which the Windows have been sold.

117.    Defendants transmitted said representations to the Plaintiff and class members, builders, suppliers and the public while failing to disclose the defective condition of their Windows, including the substantial leakage and consequential damages that would or could likely result from their Windows' defects.

118.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiff and class members, builders, suppliers and the public.

119.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiff and class members, builders, suppliers and the public relied on these representations and non-disclosures.

120.    The Plaintiff and class members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

## FOR A FIFTH CAUSE OF ACTION
**Strict Liability**

121.    The above allegations are incorporated as fully as if stated verbatim herein.

122.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

123.    Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they allow water to intrude into the interior of the residence, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed.

124.    Defendants breached their duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed.

125.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

126.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

127.    The Windows reached the Plaintiff and class members, and were intended to reach the Plaintiff and class members, without substantial change in the condition in which they were sold.

128.   Defendants are in violation of South Carolina Code §15-73-10, for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiff and class members.

129.   As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiff and class members, the Plaintiff and class members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

130.   Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiff prays that this Court will certify a class and for judgment against Defendants, for:

1)   Plaintiff's and class members' actual and consequential damages as found by the jury; statutory or punitive damages against Defendants; reasonable attorneys' fees; costs of suit; and prejudgment interest;

2)   For such other and further relief at law or equity, both in general and special, as to which Plaintiff and class members by this Complaint show themselves to be entitled.

SEEGER WEISS LLP

By:    s/ Harper Todd Segui
       Harper Todd Segui (Fed. ID No. 10841)
       180 Meeting Street
       Suite 230
       Charleston, South Carolina 29401
       (843) 513-1442 phone
       (843) 720-7789 facsimile

       AND

       Jonathan Shub
       Seeger Weiss LLP
       1515 Market St, Suite 1380
       Philadelphia, PA 19102

Daniel K. Bryson
Matthew E. Lee
Whitfield Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603

*TO BE ADMITTED PRO HAC VICE*

December 15, 2014
Charleston, South Carolina